UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MAIA AGUILAR, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXCLUSIVE WIRELESS, INC., a California corporation,<br><br>Defendant. | Case No.: 3:25-cv-06084<br><br>**DEFENDANT'S NOTICE OF REMOVAL**<br><br>Pierce County Superior Court<br>Case No. 25-2-12599-3 |

**TO: THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON, AT TACOMA:**

PLEASE TAKE NOTICE THAT Defendant Exclusive Wireless, Inc. ("Defendant" or "Exclusive Wireless") hereby removes the above-captioned action bearing Case No. 25-2-12599-3 from the Superior Court of the State of Washington for the County of Pierce, to the United States District Court for the Western District of Washington, at Tacoma. This Notice of Removal is filed pursuant to 28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1453 (the Class Action Fairness Act of 2005) ("CAFA").[1] The grounds for removal are as follows.

[1] Exclusive Wireless reserves all rights to assert any and all defenses to the Complaint. Exclusive Wireless further reserves the right to amend or supplement this Notice of Removal.



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

## I. TIMELINESS OF REMOVAL—PROCEDURAL HISTORY

1. Plaintiff Maia Aguilar ("Plaintiff") filed a civil action entitled *Maia Aguilar v. Exclusive Wireless, Inc.*, Case No. 25-2-12599-3 (the "State Court Action") against Defendant Exclusive Wireless on October 23, 2025, in the Superior Court of the State of Washington for the County of Pierce, asserting various wage and hour related claims under the laws of the State of Washington on behalf of herself and a putative Washington class. Attached hereto as **Exhibit A** are copies of the Summons and Complaint.

2. Exclusive Wireless was served with notice of process for the Complaint on November 3, 2025. *See* Declaration of Hwa Schlitz ("Schlitz Decl.") ¶ 2.

3. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all processes and pleadings on file with the Superior Court of the State of Washington, Pierce County, are attached to the Verification of State Court Records filed with this Notice.

## II. VENUE AND JURISDICTION

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 128(b), 1391, and 1441(a) because the Superior Court of the State of Washington for Pierce County is located within the Western District of Washington, Tacoma Division. *See* LCR 3(e)(1). Thus, this Court is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

5. As set forth more fully below, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(d).

6. All other requirements for removal are satisfied.

## III. REMOVAL IS PROPER UNDER CAFA

7. This Court has subject-matter jurisdiction over this action, and this action may be removed to this Court under CAFA.

8. CAFA reflects a "strong preference" by Congress to resolve class actions in federal court. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014) (quoting S. Rep. No. 109–14, at 43 (2005)). Under CAFA, a



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

removing defendant need not submit evidence of the facts establishing jurisdiction in its notice of removal. *Id.* at 84 (holding that the notice of removal "need not contain evidentiary submissions"). Rather, "a defendant's notice of removal need include only a plausible allegation" that the jurisdictional facts exist. *Id.* at 89. Evidence is required "only when plaintiff contests, or the court questions the defendant's allegation." *Id.*

9. Following *Dart Cherokee*, the Ninth Circuit instructed district courts to "interpret CAFA's provisions under section 1332 broadly in favor of removal." *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) (holding that courts may not remand where notice of removal plausibly alleges grounds for removal).

10. As set forth below, this is a putative class action in which: (1) based on the allegations in the Complaint, there are more than 100 members in the purported class; (2) at least one member of the proposed class is a citizen of a different state than Exclusive Wireless; and (3) based on the allegations in the Complaint, the claims of the putative class members exceed the sum or value of $5,000,000 in the aggregate, exclusive of interest and costs. Accordingly, this Court has original jurisdiction over this action, and the action may be removed to this Court pursuant to 28 U.S.C. § 1332(d)(2).

**A. Plaintiff's Proposed Class Exceeds 100 Members.**

11. In the Complaint, Plaintiff purports to seek damages on behalf of herself and a Washington class, consisting of "[a]ll hourly-paid or non-exempt employees of Defendant in the State of Washington at any time during the period from three years preceding the filing of this Complaint to final disposition of this action." Compl. ¶ 4.1.

12. Defendant's business records reflect that Exclusive Wireless employed approximately 436 hourly or non-exempt employees during the period from three years preceding the filing of Plaintiff's Complaint. *See* Schlitz Decl. ¶ 4. Accordingly, based on the



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

allegations in the Complaint, the aggregate number of members of the alleged class is greater than 100 for purposes of 28 U.S.C. § 1332(d)(5)(B).

**B. Minimal Diversity Exists.**

13. This Court has original jurisdiction under CAFA when the parties in a class action are minimally diverse—that is, where "any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2)(A).

14. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). "[A] person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode in a particular place, and intends to remain there permanently or indefinitely.'" *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986) (internal citations and brackets omitted). Domicile may be determined through a number of factors, including a person's current residence and location of personal and real property. *Id.* The Ninth Circuit has held that in satisfying minimal diversity, "allegations of citizenship may be based solely on information and belief." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019).

15. Per the Complaint, "Plaintiff is a resident of Washington." Compl. ¶ 3.1. On information and belief, Plaintiff has resided in Washington since at least 2014. *See* Declaration of Theresa Dira ("Dira Decl.") at ¶¶ 2–3, Ex. 1.

16. Because Plaintiff alleges she is a resident of Washington, and because other evidence indicates that Plaintiff is a longtime and current Washington resident, Exclusive Wireless is informed and believes, and on that basis alleges, that Plaintiff is a citizen of the State of Washington.

17. A corporation is a citizen only of (1) the state where its principal place of business is located, and (2) the state in which it is incorporated. *See* 28 U.S.C. § 1332(c)(1). The principal place of business for diversity purposes is normally "the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 93, 130 S. Ct. 1181, 1192, 175 L. Ed. 2d 1029 (2010).

18. At all relevant times since Plaintiff commenced this lawsuit, Exclusive Wireless has been and is a corporation existing and formed under the laws of the State of California, with its principal place of business located in California. *See* Schlitz Decl. ¶ 3. Its corporate executives, including its senior leadership team, have been and continue to be located in California, have maintained and continue to maintain their offices in California, and have performed and continued to perform their primary job duties and job functions in California. *Id.* Thus, Exclusive Wireless is a citizen of the State of California.

19. Because Plaintiff is a citizen of the State of Washington and Exclusive Wireless is a citizen of the State of California, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

**C. The Amount in Controversy Requirement Is Satisfied.**

20. Under CAFA, the claims of the individual members in a putative class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6).

21. To establish that the amount in controversy exceeds the jurisdictional amount, the defendant need only make a plausible claim that the amount in controversy exceeds that amount. *Dart Cherokee*, 574 U.S. at 84. "Though the burden remains with the defendant, it is not a daunting one." *Reynolds v. Autozone Parts, Inc.*, No. 3:25-CV-05328-BHS, 2025 WL 2437267, at *2 (W.D. Wash. Aug. 25, 2025). Where, as here, Plaintiff does not plead a specific amount of damages, a defendant need only "plausibly show that it is reasonably possible that the potential liability exceeds $5 million." *Greene v. Harley-Davidson*, 965 F.3d 767, 772 (9th Cir. 2020). A defendant can establish the amount in controversy by "provid[ing] only a short and plain statement of the grounds for removal." *Ehrman v. Cox Commc'ns Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019).



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

22. "[T]he amount in controversy is the 'amount *at stake* in the underlying litigation[,]'" which "does not mean likely or probable liability; rather, it refers to possible liability." *Greene*, 965 F.3d at 772 (emphasis in original) (quoting *Gonzales v. CarMax Auto Superstores, LLC,* 840 F.3d 644, 648 (9th Cir. 2016)). "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe[.]"), *aff'd*, 631 F.3d 1010 (9th Cir. 2011).

23. In her Complaint, Plaintiff alleges that she and the putative class are entitled to monetary damages for: (1) failure to provide rest periods, (2) failure to provide meal periods, (3) failure to pay overtime wages, (4) payment of wages less than entitled, (5) failure to accrue and allow use of paid sick leave, (6) unlawful deductions and rebates, (7) failure to pay all wages due at termination, and (8) willful refusal to pay wages. Compl. ¶¶ 6.1–13.5. Additionally, Plaintiff alleges that "Defendant's violations of RCW 49.12.020, WAC 296-126-092, RCW 49.46.090, RCW 49.46.130, and RCW 49.48.010 were willful and intentional." Compl. ¶ 13.3. Based on this allegation, Plaintiff seeks to recover double damages pursuant to RCW 49.52.070. *Id.* ¶ 13.4.

24. While Exclusive Wireless denies any liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs. Exclusive Wireless bases all calculations supporting the amount in controversy on the Complaint's allegations (along with other sources identified herein), assuming, without any admission, the truth of the allegations (which Exclusive Wireless disputes). Likewise, Exclusive Wireless bases its estimated size of the alleged putative class on the allegations in the Complaint and does not concede that class treatment is appropriate in this case, that Plaintiff



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

has standing to represent any class, or that the class proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. Exclusive Wireless expressly reserves the right to challenge Plaintiff's claims, adequacy, and standing to represent any class, Plaintiff's class definition, Plaintiff's ability to meet the requirements of Rule 23, and the calculation of damages or any other monetary relief in all respects.

**1. Alleged Failure to Provide Meal Periods.**

25. Plaintiff alleges that Exclusive Wireless "engaged in a common course of failing to provide Plaintiff and the Class members with a thirty-minute meal break for every five hours of work" and failed "to provide Plaintiff and the Class Members with thirty minutes additional pay and/or time worked for each missed meal break." Compl. ¶¶ 5.9, 5.13. As a result, Plaintiff seeks to recover unpaid wages for missed or noncompliant meal periods. *See id*. ¶ 7.10.

26. Under Washington law, "[e]mployees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift." WAC 296-126-092(1). Backpay is the appropriate remedy for meal period violations. *See Pellino v. Brink's Inc.*, 164 Wn. App. 668, 698–99, 267 P.3d 383 (2011) (affirming trial court's award of backpay damages for violation of meal and rest period provisions); *see also Wingert v. Yellow Freight Systems, Inc.*, 104 Wn. App. 583, 590, 13 P.3d 677 (2000) (explaining rationale for backpay damages arising from meal and rest period violations).

27. Exclusive Wireless' business records reflect that the alleged putative class members worked 5,539 shifts exceeding five hours in 2022, 25,319 shifts exceeding five hours in 2023, 20,779 shifts exceeding five hours in 2024, and 16,667 shifts exceeding five hours in 2025. *See* Schlitz Decl. ¶ 5. During the alleged class period, non-exempt or hourly employees employed by Exclusive Wireless in the State of Washington earned an average hourly wage of $16.65 in 2022, $17.38 in 2023, $18.32 in 2024, and $18.80 in 2025. *Id.*



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

28. Plaintiff alleges that Exclusive Wireless consistently engaged in a "common course" of failing to provide Plaintiff and the alleged class members with a thirty-minute meal break for every five of hours work, a "common course" of requiring or permitting them to work more than five consecutive hours without a meal break, a "common course" of failing to ensure that they received the meal breaks to which they were entitled, a "common course" of failing to ensure they were fully relieved of all work duties during their meal breaks, and a "common course" of failing to provide additional pay and/or time worked for each missed meal break, and that these violations were done with actual or constructive knowledge, Compl. ¶¶ 5.9–14. The sole limitation Plaintiff places on the frequency of the meal period violations is to vaguely state that that "not all" of the alleged Class members were wrongfully deprived of compensation relating to meal periods. *Id.* ¶ 7.10.

29. Absent limitations on the scope of a plaintiff's allegations of widespread meal and rest period violations, it is reasonable to assume up to a 100% violation rate for each claim for purposes of assessing the amount in controversy. *See, e.g.*, *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398–401 (9th Cir. 2010) (endorsing defendant's assumption that the entirety of its vendor's billing charges during relevant time frame could be considered in determining amount-in-controversy under CAFA); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding that "assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint," which offered "no guidance as to the frequency of the alleged violations, only that [d]efendant had a 'policy and practice' of meal and rest period violations"); *Alvarez v. Office Depot, Inc.*, No. CV177220PSGAFMX, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding that a 100% violation rate would have been reasonable under the circumstances "because Plaintiff's complaint alleges a uniform practice of meal and rest period violations."); *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (observing that defendant "could have logically assumed a 100 percent violation rate because Plaintiff does not qualify her allegations[.]").



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

30. Here, considering Plaintiff's allegations of widespread meal period violations of various types, with a vague qualifier that "not all" potential class members were deprived of meal periods, Exclusive Wireless conservatively assumes a 75% violation rate for purposes of its calculations, which is reasonable under the circumstances.

31. Assuming each putative class member was entitled to an additional 60 minutes of pay per violation (*i.e.*, 30 minutes for each missed meal period plus a 30 minute penalty), applying a conservative 75% violation rate, using the average wage for the applicable year, and factoring in double damages, the amount in controversy on Plaintiff's meal period claim equals no less than **$1,839,479.18**, based on the following calculations:

| Year | Total Shifts | Avg. hourly rate | Backpay owed per violation[2] | Assumed violation rate | Subtotal | Total (x2) |
|---|---|---|---|---|---|---|
| **2022** | 5,539 | $16.65 | 1.0 hour | 75% | $69,168.26 | $138,336.52 |
| **2023** | 25,319 | $17.38 | 1.0 hour | 75% | $330,033.17 | $660,066.33 |
| **2024** | 20,779 | $18.32 | 1.0 hour | 75% | $285,503.46 | $571,006.92 |
| **2025** | 16,667 | $18.80 | 1.0 hour | 75% | $235,004.70 | $470,009.40 |
| | | | | | **TOTAL:** | **$1,839,419.17** |

**2. Failure to Provide Rest Periods.**

32. Plaintiff alleges that Exclusive Wireless "engaged in a common course of failing to provide Plaintiff and the Class Members with a paid ten-minute break for every four hours of work" and failed "to provide Plaintiff and the Class Members with ten-minutes additional pay and/or time worked for each missed rest break." Compl. ¶¶ 5.2, 5.5. As a result, Plaintiff seeks to recover unpaid wages for missed or non-compliant rest periods. *See also, id.* ¶ 6.10.

---

[2] Under Washington law, an employee deprived of a meal period may recover their time for the missed meal period (30 minutes) plus 30 minutes of penalty wages. *See Androckitis v. Virginia Mason Med. Ctr.*, 32 Wn. App. 2d 418, 448, 556 P.3d 714, 731 (2024), *rev. den.*, 4 Wn. 3d 1007, 563 P.3d 448 (2025).



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

33. Under Washington law, "[e]mployees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period." WAC 296-126-092(4). Like meal period violations, backpay is an appropriate remedy for rest period violations. *See Pellino*, 164 Wn. App. at 698–99; *Wingert*, 104 Wn. App. at 590 (holding that employer has an "obligation to pay for the additional 10 minutes of labor it receives when its employees are legally entitled to a rest break.").

34. Assuming each putative class member was entitled to an additional 10 minutes of pay per violation for the alleged non-provision of rest periods (*i.e.*, one missed rest period per shift at 10 minutes each)[3] while applying a conservative 75% violation rate, using the average wage for the applicable year, and factoring in double damages, the amount in controversy on this claim equals no less than **$307,183**, based on the following calculations:

| **Year** | **Total Shifts** | **Avg. hourly rate** | **Backpay owed per violation[4]** | **Assumed violation rate** | **Subtotal** | **Total (x2)** |
|---|---|---|---|---|---|---|
| **2022** | 5,539 | $16.65 | .167 hour | 75% | $11,551.10 | $23,102.20 |
| **2023** | 25,319 | $17.38 | .167 hour | 75% | $55,115.54 | $110,231.08 |
| **2024** | 20,779 | $18.32 | .167 hour | 75% | $47,679.08 | $95,358.16 |
| **2025** | 16,667 | $18.80 | .167 hour | 75% | $39,245.78 | $78,491.56 |
| | | | | | **TOTAL:** | **$307,183.00** |

[3] The amount in controversy on this claim is likely much higher, as this figure was calculated based on 5+ hour shifts. It does not include shifts that were at least 4 hours but less than 5 (which would qualify for a rest period), and it does not include second rest periods. Exclusive Wireless is still in the process of evaluating how many additional shifts would have qualified for a first rest period and how many shifts would have qualified for a second or third rest period.

[4] Each missed 10-minute rest period necessitates 10 minutes (or 0.167 hours) of backpay.



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

**3. Failure to Pay Overtime Wages.**

35. Plaintiff alleges that Exclusive Wireless "engaged in a common course of failing to pay Plaintiff and the Class members for all hours worked over forty in a week at a rate of not less than one and one-half times their regular rate of pay." Compl. ¶ 5.19. As a result, Plaintiff seeks to recover unpaid wages for overtime work. *See id*. ¶ 8.4.

36. Under Washington law, "no employer shall employ any of his or her employees for a workweek longer than forty hours unless such employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he or she is employed." RCW 49.46.130(1). Further, "[a]ny employer who pays any employee less than the amounts to which such employee is entitled under or by virtue of [Chapter 49.46], shall be liable to such employee affected for the full amount due to such employee under [Chapter 49.46], less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court." RCW 49.46.090(1).

37. Based on Plaintiff's allegation of a common course of overtime violations, one hour of unpaid overtime per week per class member is a reasonable assumption. *See Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2019 WL 55361198, at *4 (N.D. Cal. Oct. 25, 2019) (assuming one hour of unpaid minimum wages and unpaid overtime per week per class member is a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations); *see also Sanchez v. Abbott Labs.*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021) (remarking that courts often endorse the assumption of one unpaid overtime hour per week based on allegations of 'a policy and practice' of failing to pay overtime wages); *Vallejo v. Sterigenics U.S., LLC*, 2021 WL 2685348, at *4 (S.D. Cal. June 29, 2021) (finding that one hour of unpaid overtime per week is a proper assumption based on allegations of "regular" violations of overtime laws); *Blevins v. Republic Refrigeration, Inc.*, 2015 WL 12516693, at



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

*10 (C.D. Cal. Sep. 28, 2015) (finding it reasonable to assume a violation rate of one hour of unpaid overtime per week based on allegations that the defendant had a "pattern and practice" and "regularly" miscalculated overtime); *Gardner v. GC Servs., LP*, 2010 WL 2721271, at *3 (S.D. Cal. July 6, 2010) (endorsing defendant's overtime calculation based solely on evidence of the number of potential class members, and observing that "[a]ccording to Defendant, if those employees, earning on average $14.50 per hour, worked 30 minutes of overtime per day over four years, the unpaid overtime owed on the overtime claim would exceed $3,000,000").

38. Assuming that each putative class member was entitled to one hour of overtime pay per week for the alleged nonpayment of overtime, and considering the overtime rate of pay based on the average wage for the applicable year, the average number of employees during the applicable year, and factoring in double damages, the amount in controversy on this claim would equal no less than **$1,706,574.24**, based on the following calculations:

| **Year** | **Avg. # of EEs** | **Avg. overtime rate** | **# Hours**[5] | **Subtotal** | **Total (x2)** |
|---|---|---|---|---|---|
| **2022** | 162 | $24.98 | 10 hours | $40,467.60 | $80,935.20 |
| **2023** | 242 | $26.07 | 48 hours | $302,829.12 | $605,658.24 |
| **2024** | 205 | $27.48 | 48 hours | $270,403.20 | $540,806.40 |
| **2025** | 177 | $28.20 | 48 hours | $239,587.20 | $479,174.40 |
| | | | | **TOTAL:** | **$1,706,574.24** |

[5] Assumes one hour of unpaid overtime per week and conservatively estimates 48 workweeks per year. 2022 is prorated.



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

**4. Payment of Wages Less Than Entitled.**

39. Plaintiff alleges that Exclusive Wireless "has engaged in a common course of failing to pay minimum wages to Plaintiff and the Class members for all hours worked." Compl. ¶ 5.15. As a result, Plaintiff seeks to recover unpaid minimum wages. *See id*. ¶ 9.4.

40. Pursuant to RCW 49.46.090, employers must pay all wages to which they are entitled under the Washington Minimum Wage Act, RCW 49.46 *et seq*.

41. As the Complaint does not include any allegations concerning the potential amount of minimum wages that were not paid in full, Exclusive Wireless conservatively assumes one hour of unpaid minimum wage per week. *See, e.g., Kastler*, 2019 WL 5536198, at *4 (endorsing defendant's assumption of one hour of unpaid minimum wages per week per class member as a "conservative estimate routinely endorsed by courts" in amount in controversy analysis under CAFA).

42. Assuming each putative class member was entitled to one hour of minimum wage per week for the alleged nonpayment of wages, and considering the rate of pay based on the average wage for the applicable year, the average number of employees during the applicable year, and factoring in double damages, the amount in controversy on this claim would equal no less than **$1,137,705.36,** based on the following calculations:

| Year | Avg. # of EEs | Avg. hourly rate | Annual overtime[6] | Subtotal | Total (x2) |
|---|---|---|---|---|---|
| **2022** | 162 | $16.65 | 10 hours | $26,973 | $53,946 |
| **2023** | 242 | $17.38 | 48 hours | $201,886.08 | $403,772.16 |
| **2024** | 205 | $18.32 | 48 hours | $180.268.80 | $360,537.60 |
| **2025** | 177 | $18.80 | 48 hours | $159,724.80 | $319,449.60 |
| | | | | **TOTAL:** | **$1,137,705.36** |

[6] Assumes 1 hour of unpaid minimum wage per week and conservatively estimates 48 workweeks per year. 2022 is prorated.



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

**5. Failure to Accrue and Allow Use of Paid Sick Leave.**

43. Plaintiff alleges that Exclusive Wireless "engaged in a common course of failing to accrue sick leave for and failing to allow the usage of paid sick leave for qualifying absences by Plaintiff and the Class members." Compl. ¶ 5.26. Plaintiff also alleges that Exclusive Wireless "must compensate Plaintiff and the Class members at their regular and normal wages." *Id.* ¶ 10.3.

44. Washington law requires that employees accrue paid sick leave for all hours worked at a rate of at least one hour for every forty hours worked. RCW 49.46.210.

45. A reasonable reading of Plaintiff's allegations of common course sick leave violations supports Exclusive Wireless' conservative assumption that the Complaint places into controversy no less than 30 hours of unpaid sick leave annually per employee, which is 75% of the total paid sick leave an employee working a standard forty-hour week with no overtime would accrue annually (assuming, conservatively, 48 workweeks).

46. Based on Plaintiff's allegations that Exclusive Wireless failed to provide putative class members with paid sick leave at the required rate of at least one every 40 hours worked, and conservatively assuming that alleged class members were deprived of 30 hours of paid sick leave annually, using the average rate of minimum wage during the alleged class period, and factoring in double damages, the amount in controversy on this claim would equal no less than **$711,065.85**, calculated as follows:

| Year | Avg. hourly rate | Avg. # of EEs | Unpaid sick leave earned annually per EE[7] | Subtotal | Total (x2) |
|---|---|---|---|---|---|
| **2022** | $16.65 | 162 | 6.25 hours | $16,858.13 | $33,716.25 |
| **2023** | $17.38 | 242 | 30 hours | $126,178.80 | $252,357.60 |
| **2024** | $18.32 | 205 | 30 hours | $112,668 | $225,336 |

[7] Assumes 30 hours of unpaid sick leave annually per employee.



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

| Year | Avg. hourly rate | Avg. # of EEs | Unpaid sick leave earned annually per EE[7] | Subtotal | Total (x2) |
|---|---|---|---|---|---|
| **2025** | $18.80 | 177 | 30 hours | $99,828 | $199,656 |
| | | | | **TOTAL:** | **$711,065.85** |

**6. Attorneys' Fees.**

47. Plaintiff seeks attorneys' fees in connection with her claims. *See* Compl., Prayer for Relief. Requests for attorneys' fees must be included in determining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (holding that claims for statutory attorney fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) (in the context of CAFA removal cases, "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."); *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 889 F.3d 785, 794 (9th Cir. 2018) (stating that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.").

48. Courts have determined that 33 percent is a reasonable benchmark for an attorneys' fee award in the context of wage and hour class action suits. *See, e.g.*, *Reynolds v. Autozone Parts, Inc.*, No. 3:25-cv-05328-BHS, 2025 WL 2437267, at *3 (W.D. Wash. Aug. 25, 2025) (finding, in a wage and hour class action context, that Defendants "persuasively provide[d] evidence that [Plaintiff's counsel] has sought up to one-third of the recovery in prior employment actions[,]" which is "consistent with the Court's own experience calculating attorneys' fees in such cases."); *Lopez v. Bellingham Marine Indus., Inc.*, No. 25-CV-00518-DAD-JDP, 2025 WL 2710458, at *12 (E.D. Cal. Sept. 23, 2025) (applying a 33 percent attorney fee award to calculate the amount-in-controversy analysis under CAFA); *Fronda v. Staffmark*



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

*Holdings, Inc.*, No. 15-CV-02315-MEJ, 2018 WL 2463101, at *12 (N.D. Cal. June 1, 2018) (approving one-third attorney fee recovery, noting that such recoveries are "not uncommon in wage and hour class action settlements").

49. Plaintiff's counsel has sought a 33% attorney fee award in its class action wage-and-hour cases filed in Washington. *See* Dira Decl. ¶ 4.

50. RCW 49.46.090, 49.48.030, and 49.52.070 authorize reasonable attorneys' fees in actions for the recovery of unpaid wages. Assuming that Plaintiff's counsel intends to seek attorney fees equal to 33% of the amount recovered on the violations alleged in the Complaint, the amount of attorney fees in controversy is **$1,900,479.13** (0.3333 x $5,702,007.62).

**7. Aggregate Amount in Controversy.**

51. Although Defendant denies Plaintiff's allegations that she or any putative class members are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the putative class is at least **$7,602,486.75,** calculated as follows:

| Claim | Damages |
|---|---:|
| Alleged Unpaid Meal Periods | $1,839,479.17 |
| Alleged Unpaid Rest Periods | $307,183.00 |
| Alleged Unpaid Overtime | $1,706,574.24 |
| Alleged Minimum Wage Owed | $1,137,705.36 |
| Alleged Unpaid Sick Leave | $711,065.85 |
| **Damages Subtotal:** | **$5,702,007.62** |
| Attorney Fees (33%) | 1,900,479.14 |
| **Total Amount in Controversy** | **$7,602,486.76** |

52. In addition, the figures above do not encompass damages or penalties associated with Plaintiff's Sixth (Unlawful Deductions and Rebates) or Seventh (Failure to Pay All Wages



BUCHALTER
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 206.319.7052

Due at Termination) Claims for Relief. Considering reasonable assumptions for any of these claims would contribute to the minimum amount in controversy. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (citing *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)).

53. As set forth above, the amount Plaintiff has placed in controversy satisfies CAFA's $5,000,000 requirement.

**D. All Other Removal Requirements Are Satisfied.**

54. CAFA jurisdiction does not apply where "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief[.]" 28 U.S.C. § 1332(d)(5)(A). Exclusive Wireless is not a State, State official, or governmental entity.

55. The Notice of Removal is timely filed, pursuant to 28 U.S.C. § 1446(b). Exclusive Wireless was served with the Complaint on November 3, 2025. Thus, Exclusive Wireless files this Notice of Removal within 30 days of its receipt of the Complaint.

56. Pursuant to 28 U.S.C. § 1446(d), Exclusive Wireless will promptly serve a copy of this Notice of Removal upon counsel for Plaintiff, and will file a copy with the Clerk of the Superior Court of the State of Washington for the County of Pierce.

57. Pursuant to LCR 101(b), Exclusive Wireless has contemporaneously filed with this Notice of Removal a copy of the operative complaint, a certificate of service listing all counsel who have appeared in this action with their contact information, a copy of any Jury Demand filed in the state court action, and a completed Civil Cover Sheet.

58. By filing this Notice of Removal, Exclusive Wireless does not waive any defense and instead reserves all such defenses and does not concede that the allegations in the Complaint state a valid claim under any applicable law.



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

## IV. CONCLUSION

59. For all the reasons stated above, this action is removable to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, and this Court may exercise jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d).

60. If any question arises to the propriety of the removal of this action, Defendant respectfully requests the opportunity to amend and supplement this Notice of Removal and to present a brief and oral argument in support of its position that this case is removable.

DATED this 3rd day of December, 2025.

BUCHALTER
A Professional Corporation

*s/ Alexandra M. Shulman*
Alexandra M. Shulman, WSBA No. 48888
Email: ashulman@buchalter.com

1420 Fifth Avenue, Suite 3100
Seattle, WA 98101
Telephone: (206) 319-7052

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing DEFENDANT'S NOTICE OF REMOVAL by the method(s) indicated on the date set forth below on the following parties:

Douglas Han, WSBA No. 59429
Email: dhan@justicelawcorp.com
Shunt Tatavos-Gharajeh, WSBA No. 59424
Email: statavos@justicelawcorp.com
Winthrop Hubbard, WSBA No. 56458
Email: whubbard@justicelawcorp.com
JUSTICE LAW CORPORATION
751 North Fair Oaks Avenue, Suite 101
Pasadena, CA 91103
Telephone: (818) 230-7502

*Attorneys for Plaintiff*

by ☐ mailing; ☒ e-mailing; ☒ CM/ECF electronic service at the party's email address as recorded on the date of service in the court's eFiling system.

DATED this 3rd day of December, 2025.

*s/ Alexandra M. Shulman*
Alexandra M. Shulman, WSBA No. 48888

BUCHALTER 106480165v10



BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052